# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **JAMAL S. YANAKI,**<br>**Plaintiff and Counterclaim Defendant,**<br><br>**vs.**<br><br>**CHARLES J. DANIEL, M.D.**<br>**Defendant and Counterclaim Plaintiff.** | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br>**Case No.  2:07CV648 DAK** |

This matter is before the court on (1)  Defendant/ Crossclaim-Plaintiff Dr. Daniel's ("Dr. Daniel") Motion in Limine; (2) Plaintiff/Crossclaim-Defendant Mr. Yanaki's ("Mr. Yanaki") Motion in Limine; (3) the issue concerning the possibility that Dr. Daniel may call Mr. Yanaki's counsel as a witness at trial, which the court has construed as Dr. Daniel's Motion to Disqualify Plaintiff's Attorney, and (4) the Objections to Mr. Taggart's designated deposition testimony.   A hearing on the motions (but not on the objections to the deposition testimony) was held on May 5, 2009.   At the hearing, Dr. Daniel was represented by Matthew N. Evans and Matthew M. Cannon.  Mr. Yanaki was represented by David W. Scofield.   Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. Dr. Daniel's Motion In Limine

**A.      Evidence Concerning Attorneys' Fees and Costs**

Dr. Daniel seeks a ruling that if he prevails on his claim under the Utah Uniform Securities Act, which provides for costs and attorneys' fees, those issues shall be addressed through post-verdict briefing by the court–not by the jury during trial.   Mr. Yanaki, however, argues the Tenth Circuit's recent opinion in *Simplot v. Chevron Pipeline,* ___ F.3d ___,  2009 WL 1089558 (10th Cir. April 23, 2009) mandates that he is entitled to have the jury determine the issue of costs and attorneys' fees in this case.

In *Simplot,* the fees were sought as consequential damages caused by a breach of a contractual duty to defend.  In this case, Dr. Daniel's entitlement to attorney fees and costs arises from statute; unlike the situation in *Simplot*, which involved a "'free-standing' breach of contract claim . . . for attorneys' fees already incurred in a separate, underlying action against a third party." *Id. *12.   Thus, the court finds that if Dr. Daniel prevails on his claim under the Utah Uniform Securities Act, the issue of  costs and attorneys' fees shall be addressed by the court after post-verdict briefing by the parties.

**B.      Testimony of Dr. Richard Anderson**

Dr. Daniel seeks a ruling that if Dr. Anderson does not testify at trial, then Mr. Yanaki cannot testify at trial about what Dr. Anderson allegedly told him about the Department of Defense grant because the statement to Mr. Yanaki would constitute inadmissible hearsay and should be excluded.   The court agrees that such testimony constitutes inadmissible hearsay.

If appears, however, that Dr. Anderson will testify at trial, and thus this issue is likely moot.  As long as Dr. Anderson testifies at trial, Mr. Yanaki may testify as to what Dr. Anderson

allegedly told him.

## II.   Mr. Yanaki's  Motion in Limine

**A.  Testimony Regarding the Lawsuit Filed By Plaintiff's Pre-Bacterin Employer**

 Mr. Yanaki argues that his relationship with his employer ***prior*** to Bacterin is

unconnected to Dr. Daniel's claims surrounding the purchase of Bacterin stock, and thus his prior

lawsuit is irrelevant here.   He contends that the mere fact of being accused of stealing trade

secrets is completely lacking in any probative value.

 Dr.  Daniel, however, argues that Mr. Yanaki had a duty to disclose information material

to the sale of the Bacterin stock and that, when purchasing stocks from a private individual under

the circumstances this case presents, a potential buyer would undoubtedly want to know if the

seller had recently been sued by an employer for allegedly stealing trade secrets.   Dr. Daniel also

argues that under Rule 405(b), "[i]n cases in which character or a trait of character of a person is

an essential element of a charge, claim, or defense, proof may also be made of specific instances

of that person's conduct."   Dr. Daniel contends that Mr. Yanaki's truthfulness and willingness to

allegedly abuse company information is a character trait that is essential to Daniel's claims of

fraud.

 The court finds that testimony concerning the lawsuit involving Mr. Yanaki and his

previous employer is irrelevant to the claims at issue here.   Because the lawsuit was settled,

there was no determination that Mr. Yanaki actually committed the acts asserted in the lawsuit.

Mere allegations do not constitute evidence.  The court also finds that even if there were any

probative value to this testimony, it would be substantially outweighed by the danger of unfair

prejudice and confusion of the issues.   Thus, any testimony regarding this lawsuit is excluded.

**B.      Testimony Regarding Mr. Yanaki's  Individual Sales Transactions of Bacterin Stock to Persons Other Than Defendant.**

Mr. Yanaki argues that whether he had sold to friends, family and acquaintances at prices less than he sold to Dr. Daniel, and at times where he was under different financial circumstances, is irrelevant to whether Dr. Daniel was getting a good deal or even the best deal that Mr. Yanaki was willing to give Dr. Daniel at the time of the sale.

Dr. Daniel disagrees, arguing that Mr. Yanaki failed to disclose that within a year prior to his offer to Daniel, he had sold many of his Bacterin shares to other individuals for over 70% less than the price at which he was offering them to Dr. Daniel and that the price was consistent with the shares that Bacterin and/or Dr. Cook was offering to others.   Dr. Daniel contends that had he been told of these sales, he would not have considered purchasing Bacterin stock from Mr. Yanaki at $2.30 a share.   In addition, Dr. Daniel argues that these material omissions are even more relevant because Mr. Yanaki had represented that he had intimate knowledge of the business dealings of Bacterin to induce Dr. Daniel to sign the Bill of Sale.   According to Dr. Daniel, the fact that Mr. Yanaki had sold the stock for far less than he was willing to sell to Dr. Daniel also demonstrates that Mr. Yanaki was more likely to make misrepresentations to Dr. Daniel to try to get an inflated price for his shares.

The court finds that evidence concerning Mr. Yanaki's individual sales transactions of Bacterin stock to individuals other than Dr. Daniel is relevant and admissible at trial.   Mr. Yanaki may explain the transactions and the reasons for selling his stock to others at a lower price, but Dr. Daniel is entitled to explore these sales transactions to other individuals.

**C.     Evidence from Guy Cook Concerning the Response of Plaintiff to Defendant's Question**

Mr. Yanaki contends that the statements made by him on July 3, 2007 came after the July 2, 2007 telephone conversation in which the purchase and sale agreement was reached and thus it could not have induced Dr. Daniel to enter into the contract.   The court, however, has already ruled that whether a contract was reached at that point is a question for the jury, and thus this argument has no merit.   Mr. Yanaki also argues that Mr. Cook is in no position to know whether Mr. Yanaki's representations to Dr. Daniel were in fact false.

Dr. Daniel claims that Dr. Cook was clearly in a position to know whether Mr. Yanaki's representations were false.

The court agrees with Dr. Daniel that Dr. Cook's testimony concerning the accuracy of the representations made by Mr. Yanaki in his email on July 3, 2007 is relevant and admissible.

**III.  DR. DANIEL'S MOTION TO DISQUALIFY MR. SCOFIELD AS MR. YANAKI'S COUNSEL**

According to Dr. Daniel, in the spring of 2007, just a few months before meeting Dr. Daniel, Mr. Yanaki entered into at least two transactions with his attorney, Dave Scofield, his law firm for the sale of Bacterin stock.   Mr. Yanaki sold these shares for 60 cents per share – consistent with the going rate for shares that had been established by Bacterin in a letter to the shareholders in January 2007.   Dr. Daniel also argues that Mr. Yanaki also sold shares of Bacterin stock to Mr. Scofield in exchange for a car.

Mr. Yanaki and Mr. Scofield disagree, claiming that Mr. Scofield's testimony is unnecessary because Mr. Yanaki may testify as to the transaction.

Rule 3.7 of the Utah Rules of Professional Conduct states that, absent substantial

hardship on the client, "a lawyer shall not act as an advocate at trial for a party in which the lawyer is likely to be a necessary witness."   In determining whether substantial hardship exists, a court is required to balance the interests of those of the tribunal and opposing party.  *See DJ Inv. Group LLC v. Westbrook LLC*, 147 P.3d 414, 419 (Utah 2006).   Factors to consider in making this determination include whether the tribunal is likely to be misled, whether the opposing party is likely to suffer prejudice, the importance of the testimony, and the effect of disqualification on the lawyer's client.  *Id.*  Even where there is a risk of prejudice to the opposing party, "due regard must be given to the effect of disqualification on the lawyer's client."  *Rule 3.7 of the Utah Rules of Professional Conduct, Comment  4.*  "It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id; see Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.,* 781 P.2d 478, 480-81 (Utah Ct. App.1989) ("A motion to disqualify counsel must be immediately filed and diligently pursued as soon as the party becomes aware of the basis for disqualification, and it may not be used as a manipulative litigation tactic.").

The court declines to disqualify Mr. Scofied for two reasons:  the untimely filing of the instant motion to disqualify and because disqualification would impose a substantial hardship on Mr. Yanaki.   Mr. Yanaki would be forced to hire new counsel at a substantial cost and the trial of this matter would be substantially delayed.  But the court also declines to strike Mr. Scofield as a "may call" witness.  Ideally, the testimony of Mr. Scofield will not be necessary, but if Dr. Daniel finds during the trial that Mr. Scofield's testimony becomes necessary, the court will revisit the issue at that time.    The court, however, will not exclude Mr. Scofield from the courtroom during Mr. Yanaki's testimony.

**IV. OBJECTIONS TO MR. YANAKI'S DESIGNATED DEPOSITION TESTIMONY OF TAGGART**

The court has reviewed Dr. Daniel's objections to the Taggart deposition testimony. At this point, the court is inclined to overrule the objections and permit the testimony.[1] But during the trial, when there is more context to the testimony and the objections, Dr. Daniel may renew his objections, and the court may rule otherwise.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Dr. Daniel's Motion in Limine [Docket # 76] is GRANTED, and Mr. Yanaki's Motion in Limine [Docket # 78] is GRANTED in part and DENIED in part, consistent with the discussion above.   Dr. Daniel's Motion to Disqualify Mr. Scofield (which has not been filed as a motion but was briefed in documents ## 94 & 96) is DENIED, but Mr. Scofield may remain designated as a "may call" witness.  As to Dr. Daniel's objections to Mr. Taggart's deposition testimony, the court preliminarily OVERRULES the objections, but Dr. Daniel may renew his objections during trial.

DATED this 6th day of May, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[1] Page 19 of the Taggart deposition has been omitted from Mr. Yanaki's submission of the designated deposition pages (see Exhibit A of Docket # 92) and thus the court has not been able to review that page.   The court requests that Mr. Yanaki file this missing page.

7